[Cite as *Schmidt v. Lincoln Elec. Co.*, 2025-Ohio-5523.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RHONDA SCHMIDT,                          :

      Plaintiff-Appellee,          :

                      :       No. 115084

      v.                           :

LINCOLN ELECTRIC                         :
COMPANY, ET AL.,                         :

      Defendants-Appellants.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 11, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-988921

---

### *Appearances:*

Robert P. Sweeney Co., LLP, and Robert P. Sweeney, *for appellee.*

Matty, Henrikson & Greve, Kirk Henrikson, and Alan Senderovitch, *for appellants.*

---

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant Lincoln Electric Company ("Lincoln") appeals a judgment of the Cuyahoga County Court of Common Pleas, finding that appellee Rhonda Schmidt ("Schmidt") is entitled to participate in the Ohio Workers' Compensation

Fund, for the additional conditions of spinal stenosis in the cervical spine, substantial aggravation of acceleration of stenosis at cervical C5-C6 and C6-C7. Lincoln claims the following error:

> The trial court erred in finding that appellee Rhonda Schmidt had met her burden of proving by a preponderance of the evidence that she was entitled to participate in the Ohio workers compensation act in Claim No. 17-165397 for the additional conditions of spinal stenosis in the cervical spine; substantial aggravation of pre-existing acceleration of cervical C5-C6; Substantial aggravation of pre-existing acceleration of cervical C6-C7.

We find that the trial court's judgment is not against the manifest weight of the evidence. Accordingly, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} In 2016, Schmidt presented a claim to the Ohio Industrial Commission seeking workers' compensation benefits for respiratory illnesses caused by her exposure to chemicals while she was employed by Lincoln Electric. The claim was allowed for occupational asthma, sinusitis, and chemical sensitivity at that time.

{¶ 3} In June 2023, Schmidt filed a motion with the Ohio Industrial Commission seeking additional allowances for the conditions of spinal stenosis in the cervical spine, osteoporosis of the cervical spine, and substantial aggravation of preexisting acceleration of cervical C5-C6 and C6-C7. Following a hearing, a district hearing officer with the Ohio Industrial Commission allowed Schmidt's additional claim for osteoporosis of the cervical spine, but he disallowed the remaining claims. In his decision, the district hearing officer found that the additional claim for osteoporosis of the spine "is causally related to the allowed injury that occurred at

work on 11/29/2016 by way of flow-through." Regarding the disallowed claims, the district hearing officer stated that "[i]t has not been established that the requested additional conditions were causally related to or substantially aggravated by the allowed injury that occurred at work on 11/29/2016."

{¶ 4} Pursuant to R.C. 4121.35(B) and 4123.511(D), Schmidt appealed the district hearing officer's decision. Following a hearing, a staff hearing officer similarly allowed the claim for osteoporosis of the cervical spine and disallowed Schmidt's claims for spinal stenosis of the cervical spine and substantial aggravation of preexisting acceleration of cervical C5-C6 and C6-C7.

{¶ 5} Pursuant to R.C. 4123.512, Schmidt appealed the staff hearing officer's decision to the Cuyahoga County Court of Common Pleas where the case proceeded to a bench trial. Schmidt testified at the bench trial that she was treated with high dose steroids and NUCALA injections because low doses of steroids were unable to control her asthma. In 2018, Schmidt was diagnosed with osteoporosis and, in 2021, she was diagnosed with spinal stenosis at C5-C6 and C6-C7. At the time of trial, she was still undergoing treatment for spinal stenosis.

{¶ 6} Schmidt submitted the expert report and testimony of Dr. James Edward Lockey ("Dr. Lockey"), a pulmonologist, to establish that her additional conditions were related to her original work-related injury. Dr. Lockey testified that "high dose steroid use is a secondary cause of spinal stenosis because it is associated with an increased risk for osteoporosis, and resultant cervical and lumbar fractures, which then put that person at increased risk for spinal stenosis, particularly when

this is associated with normal degenerative spinal disease." (Dr. Lockey trial depo., p. 19.) His opinion was based on his education and experience as well as four peer-reviewed articles that Dr. Lockey indicated support the finding that degenerative spinal changes can occur in individuals who develop osteoporosis from long-term use of high-dose steroids.

{¶ 7} Lincoln presented the expert report and testimony of Dr. Dean Erickson ("Dr. Erickson"), a board-certified doctor of internal medicine and occupational medicine. Dr. Erickson opined, based on his review of Schmidt's MRI, that Schmidt has degenerative disc disease at C5-6 and C6-7. (Dr. Erickson trial depo., p. 24.) However, Dr. Erickson testified: "It's my opinion, to a reasonable degree of medical probability and certainty, that the chronic use of the steroids leading to osteoporosis did not result in substantial aggravation of C5-6 and C6-7." (Dr. Erickson trial depo., p. 26, 28-29.) He opined instead that Schmidt's spinal stenosis was the result of a natural degenerative process. (Dr. Erickson trial depo., p. 29.) Dr. Erickson also noted that the MRI report of Schmidt's spine revealed a congenital narrowing of her spinal canal, which he explained could indicate she was born with a narrow spinal canal. (Dr. Erickson trial depo., p. 26.)

{¶ 8} The trial court issued written findings of fact and conclusions of law based on the evidence presented at trial. The trial court concluded that Schmidt "met her burden of proving by a preponderance of the evidence that she is entitled to participate in the Ohio Workers' Compensation Act . . . for the additional condition of Spinal Stenosis in Cervical Spine, substantial aggravation of or

acceleration of stenosis at cervical C5-C6 and C6-C7." Lincoln now appeals the trial court's judgment.

## II. Law and Analysis

{¶ 9} In the sole assignment of error, Lincoln argues the trial court erred in relying on Dr. Lockey's testimony to find a causal link between Schmidt's long-term use of steroids and her conditions of spinal stenosis in the cervical spine, substantial aggravation of preexisting acceleration of cervical C5-C6, and substantial aggravation of preexisting acceleration of cervical C6-C7. Lincoln argues the four peer-reviewed articles on which Dr. Lockey based his expert opinion do not support his finding of a direct relationship between long-term steroid use and spinal stenosis in the absence of fractures. Lincoln argues that Dr. Lockey's testimony was not reliable and that the trial court's judgment is against the manifest weight of the evidence.

{¶ 10} In a manifest-weight review, the appellate court considers

"the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

*Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997).

{¶ 11} When reviewing a manifest-weight challenge, we "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and

determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20.

{¶ 12} The parties' experts agreed that long-term steroid use can cause osteoporosis and that Schmidt's osteoporosis was caused by her steroid use. Dr. Lockey opined that osteoporosis can then cause spinal stenosis, even in the absence of a fracture. (Dr. Lockey trial depo., p. 17.) By contrast, Dr. Erickson testified that osteoporosis does not cause spinal stenosis in the absence of fractures. (Dr. Erickson trial depo., p. 20.) Dr. Erickson opined that although steroids cause osteoporosis, they do not, by themselves, cause spinal stenosis. (Dr. Erickson trial depo., p. 20.) Thus, there was a difference in the experts' opinions.

{¶ 13} In resolving conflicting testimony, we have to consider the credibility of each witness, keeping in mind the presumption in favor of the factfinder. *Eastley*, 2012-Ohio-2179, at ¶ 21. "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *In re Z.C.*, 2023-Ohio-4703, ¶ 14, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."'"

*Id.*, quoting *Seasons Coal* at fn. 3, quoting 5 Ohio Jur, 3d, Appellate Review, § 603, at 191-192 (1978).

{¶ 14} Schmidt's expert, Dr. Lockey, testified that Schmidt's long-term use of steroids contributed to the development of spinal stenosis. He stated, in relevant part:

> It was my opinion within a reasonable degree of medical probability that Rhonda Schmidt's chronic steroid use to control her work-related pulmonary condition significantly contributed to her cervical and spinal degenerative changes and spinal stenosis.

(Dr. Lockey trial depo., p. 17.) He stated that a condition such as degenerative arthritis of the spine is "a common occurrence," but degenerative changes in the spine are also dependent on comorbidities. (Lockey trial depo., p. 29.) He continued:

> Ms. Schmidt is at risk of degenerative spinal problems just based on her age alone, based on her increased body weight, but also based on her long use of corticosteroids and associated osteoporosis.
>
> So the question is, is she at increased risk for degenerative spinal disease because of her pre-existing occupational condition. It was my opinion that yes, she is at increased risk. This puts her at a higher risk for all kinds of degenerative complications, including spinal stenosis.

(Lockey depo. tr. 29.)

{¶ 15} Lincoln's expert, Dr. Erickson, admitted that an MRI for Schmidt's spine from September 21 , 2021, shows degenerative disc disease at C5-6 and C6-7. He nevertheless maintained that Schmidt's "steroid use did not substantially aggravate the central spinal stenosis." (Dr. Erickson trial depo. tr. 26.) When asked for the basis for his opinion, Dr. Erickson stated that (1) there was data on which to

determine a baseline for her spinal stenosis before she started taking steroids, and (2) steroids do not cause stenosis in the absence of fractures. (Dr. Erickson trial depo., p. 33.) Schmidt began taking high dose steroids in 2015. Although there were no images of Schmidt's spine from 2015 with which to compare her spinal stenosis, Dr. Erickson admitted that she first complained of neck pain in 2021, and that there was no evidence of stenosis prior to 2021. (Dr. Erickson trial depo. tr. 45-49.)

{¶ 16} Dr. Erickson agreed that degenerative disc disease and arthritis combine to cause spinal stenosis. (Dr. Erickson trial depo., p. 21, 25 and 69.) He admitted that Schmidt's MRI showed spurring and arthritis in her spine and that these were degenerative conditions. He also conceded that spinal stenosis is a degenerative disease and that steroid use causes osteoporosis, another degenerative disease. (Dr. Erickson trial depo. tr. 66-67.) However, he refused to admit that prolonged steroid use aggravates or causes other degenerative conditions of the spine such as spinal stenosis. (Dr. Erickson trial depo. tr. 68.)

{¶ 17} On cross-examination, Schmidt's attorney questioned Dr. Erickson with progress notes from Schmidt's treating physician. In one progress note dated June 29, 2022, Schmidt's treating physician stated that Schmidt's "spinal stenosis C5-C6 and 7 and osteoporosis [was] caused by and/or accelerated by heavy, prolonged use of steroids to treat her occupational asthma and chronic sinusitis." (Dr. Erickson trial depo., p. 58; exhibit No. 5.) In another progress note dated October 10, 2024, Schmidt's treating physician again wrote "spinal stenosis C-5, C-6, C-7 as brought on and/or accelerated by osteoporosis, which itself has been

caused by and substantially accelerated by heavy, prolonged use of steroids to treat her occupational asthma and chronic sinusitis." (Dr. Erickson trial depo., p. 59; exhibit No. 6.) When confronted with these observations from Schmidt's treating physician, Dr. Erickson acknowledged that these notes reflected the doctor's opinion. (Dr. Erickson trial depo., p. 60.)

{¶ 18} Finally, Dr. Erickson reviewed the peer-reviewed articles referenced by Dr. Lockey in his deposition. Dr. Erickson testified that none of the articles support the position that prolonged use of high-dose steroids cause spinal stenosis in the absence of fractures. Indeed, all of the articles refer to the fact that fractures resulting from degenerative changes in the spine can cause spinal stenosis. However, one of the articles states, in relevant part:

> In addition to osteoporosis, degenerative spine conditions are more prevalent in older adults and are associated with high risks of morbidity and mortality and greater healthcare costs. And these include disc degeneration, scoliosis, spondylolisthesis, and stenosis.

Wiersbicki, et. al., *The Relation of Osteoporotic Vertebral Fractures and Spine Degeneration on the Occurrence of Complications: A Systemic Review*, European Spine Journal 33:3213 (Feb. 1, 2024). This paragraph of the article focuses on degenerative spine conditions other than osteoporosis and their potential contribution to spine fractures. The authors further state that they reviewed studies involving patients with osteoporotic vertebral fractures and "patients with preexisting degenerative chances (including disc degeneration, scoliosis, spondylolisthesis and stenosis)." *Id.* at p. 3214. The studies reviewed did not

mention the use of high-dose steroids, but they involved osteoporotic vertebral fractures in patients with preexisting spinal degeneration. When confronted with this systemic review, Dr. Erickson again maintained "there's no scientific literature that says osteoporosis causes spinal stenosis. Osteoporosis can cause fractures." (Dr. Erickson trial depo., p. 66.)

{¶ 19} The parties' experts offered conflicting expert testimony in this case, and the trial court, acting as the factfinder, found Dr. Lockey's testimony more credible than that of Dr. Erickson. Although the peer-reviewed articles cited by Dr. Lockey do not directly support his opinion, they support the idea that degenerative conditions combine to cause stenosis and that high-dose steroids accelerate the natural degenerative process. Moreover, Dr. Lockey's opinion was corroborated by the progress notes of Schmidt's treating physician, who expressed the opinion that Schmidt's spinal stenosis was caused by and/or accelerated by prolonged use of steroids to treat her occupational asthma and chronic stenosis. There is no evidence corroborating Dr. Erickson's contrary opinion. Therefore, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the trial court's judgment must be overturned and a new trial ordered. Accordingly, the sole assignment of error is overruled.

{¶ 20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)